UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEVONTE SMITH,

                Plaintiff,

v.

CORRECTIONAL OFFICER M. DINOIA, *et al.*,

                Defendants.

No. 19-CV-4471 (KMK)

OPINION & ORDER

Appearances:

Devonte Smith
Cheektowaga, NY
*Pro se Plaintiff*

Jane H. Felix, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

      Plaintiff Devonte Smith ("Plaintiff") filed this pro se Action, under 42 U.S.C. § 1983, against Defendants,[1] alleging violations of his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments based on incidents that took place at Westchester County Jail (the

---

[1] "Defendants" collectively refers to Deputy Commissioner Leandro Diaz ("Diaz"), Assistant Warden Karl Vollmer ("Vollmer"), Assistant Warden R. Watkins ("Watkins"), Detective John V. Peters ("Peters"), Captain Thomalin ("Thomalin"), Sergeant Del Treste ("Del Treste"), Sergeant Shultis ("Shultis"), Correctional Officer ("C.O.") M. Dinoia ("Dinoia"), C.O. Holness ("Holness"), Captain Roberts ("Roberts"), Sergeant Borehill ("Borehill"), and ADA Jane Doe of Mount Pleasant (the "ADA"). Nurse Tufaro ("Tufaro") was originally a named defendant in this Action as well, but after Tufaro's counsel filed a Motion To Dismiss the Complaint, Plaintiff requested to withdraw his claims as to Tufaro. (*See* Dkt. No. 29.) Accordingly, Tufaro was dismissed from the Action, and her Motion To Dismiss the Complaint is now moot.

"Jail"). (*See* Compl.; Am. Compl. (Dkt. Nos. 2, 29-1).) Before the Court is a Motion To Dismiss on behalf of Defendants Del Treste, Borehill, Diaz, Roberts, Thomalin, Peters, Watkins, Vollmer, and Shultis (collectively, "Moving Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Not. of Mot. (Dkt. No. 35).) For the reasons that follow, the Motion is partially granted.

## I. Background

### A. Factual Background

Plaintiff's allegations are occasionally difficult to understand. However, assuming all facts alleged in the Amended Complaint as true, the Court best surmises the facts as follows.[2]

On the morning of May 23, 2016, Plaintiff was let out of his cell for "a cell clean up and a legal phone call." (Am. Compl. ¶ 17.) Dinoia and Holness were "on post" for Plaintiff's cell block. (*Id.*) Plaintiff approached Dinoia and asked about "an object called the window-crank, [which] was requested for another" inmate. (*Id.*) After Plaintiff was given the window-crank, he gave it to the other inmate. (*Id.*) At some point, while doing his rounds, Dinoia approached Plaintiff, asking whether he could talk to him for a minute. (*Id.* ¶ 18.) Plaintiff claims he now had the window-crank in his possession. (*Id.*) Dinoia asked Plaintiff to step into his cell, and Plaintiff complied. (*Id.*) Dinoia said, "There's no reason for you and I to bump heads or for you to stick the tier up." (*Id.*) Plaintiff alleges he had no intention to "stick the tier up" or "not lock-

---

[2] In response to Tufaro's (now-moot) Motion To Dismiss the Complaint, Plaintiff sought leave to file an Amended Complaint. (*See* Dkt. No. 29; Am. Compl.) The Court noted, in response to a letter from defense counsel, that it would consider the instant Motion as to Plaintiff's Amended Complaint. (*See* Dkt. No. 31.) Accordingly, the Court uses the Amended Complaint to inform its understanding of the alleged facts. Nevertheless, given the wide latitude the Court is bound to give to pro se plaintiffs, where it appears that Plaintiff inadvertently omitted facts or individuals mentioned in the Complaint, the Court will use the Complaint to fill in the gaps.

2

in." (*Id.*) Plaintiff told Dinoia, "We never had any issue prior, but if you want me to lock-in then I will." (*Id.*) Dinoia then told Plaintiff to give him the window-crank. (*Id.*) Plaintiff complied, but Dinoia allegedly "became irate" and continued to ask him for the window-crank, even though Plaintiff had already given it to him. (*Id.*) Dinoia then allegedly tackled Plaintiff onto his bed and began beating his face, causing Plaintiff to hit the wall and chip his right front tooth. (*Id.*) According to Plaintiff, Holness was "operating the control panel" at this time. (*Id.*) At some point, Holness came to Plaintiff's cell and proceeded to hold Plaintiff down while Dinoia continued to punch Plaintiff's head and left shoulder. (*Id.* ¶ 19.)

Subsequently, the emergency response team arrived and escorted Plaintiff to the solitary housing unit ("SHU"), where Plaintiff was stripped of his clothes. (*Id.* ¶ 20.) A correction officer arrived and gave Plaintiff a statement form, which Plaintiff filled out and returned to him. (*Id.*) Plaintiff then filed a grievance regarding Dinoia's assault and addressed it to Shultis. (*Id.*) According to Plaintiff, Shultis denied the grievance because he said the incident was already being investigated and because the "[c]hief administrations office" would investigate the matter. (*Id.*) Plaintiff told Defendant Thomalin, who was present when Plaintiff was removed by the emergency response team, that these officers "were wrong in the[ir] actions against" him. (*Id.*)

Plaintiff was subject to a disciplinary hearing on the charges of possession of a deadly or dangerous weapon, assaulting another person, disobedience of orders, and disorderly conduct. (*Id.* ¶ 21.) Roberts conducted his subsequent disciplinary hearing, during which he allegedly stated that he would "go with what [the] officers say whether they are right or wrong." (*Id.* ¶ 22.) Roberts was allegedly biased throughout the hearing. (*Id.*)

Plaintiff alleges that Dinoia and Holness then went to Peters to initiate certain charges. (*Id.* ¶ 23.) On June 8, 2016, Plaintiff was "falsely charged" with assault in the second degree.

3

(*Id.*)  Plaintiff also alleges that Watkins and Vollmer "conspired" together to deny the grievance he filed regarding the incident and that, later, Shultis "persuaded" Plaintiff not to follow through with filing his grievance.  (*Id.*)  Plaintiff also alleges that Del Treste was the supervisor who investigated the "false ticket" filed by Dinoia following the altercation.  (*Id.*)

Plaintiff also alleges that he was "taken to court several times for matters that [he] did not commit."  (*Id.* ¶ 24.)  It is unclear whether Plaintiff states this in connection with the purported altercation with Dinoia and Holness or other events not described in the pleading.  According to Plaintiff, the charges were later "dismissed on an injustice" by the state judge.  (*Id.* ¶¶ 24–25.)  Plaintiff claims that Peters and the ADA "knowingly and intelligently maliciously attempted to obtain a false conviction" against him.  (*Id.* ¶ 29.)

As a result of Dinoia and Holness's purported assault and the subsequent disciplinary hearing and criminal charges brought against him, Plaintiff allegedly suffered from physical pain, has a chipped tooth, and continues to suffer from anxiety, trouble sleeping, and nightmares and seeks monetary damages.  (*Id.* ¶¶ 30–31.)

B.  Procedural Background

Plaintiff filed his Complaint on May 13, 2019.  (*See* Compl.)  His Application to proceed in forma pauperis ("IFP") was granted on May 17, 2019.  (*See* Dkt. No. 4.)  On July 9, 2019, the Court provided Moving Defendants with a briefing schedule for their anticipated motion to dismiss the Complaint.  (Dkt. No. 11.)  On July 25, 2019, the Court provided then-defendant Tufaro with a separate briefing schedule for her anticipated motion.  (Dkt. No. 24.)  Tufaro filed a Motion To Dismiss the Complaint on August 22, 2019.  (*See* Tufaro Not. of Mot. (Dkt. No. 25).)  On September 16, 2019, Plaintiff wrote to the Court seeking leave to amend his Complaint and attaching the Amended Complaint.  (*See* Dkt. No. 29; Am. Compl.)  In his Letter, Plaintiff

4

specifically noted that he wished to "subtract" Tufaro from the Action. (Dkt. No. 29.) Tufaro was subsequently terminated from the Action on September 18, 2019. (*See* Dkt. No. 33.)

In response to Plaintiff's Amended Complaint, Moving Defendants indicated that they wished to maintain the same arguments in support of dismissal of the Amended Complaint as they had in support of dismissal of the Complaint because they believed the factual allegations were "identical to the original [C]omplaint." (Dkt. No. 30 at 1.) The Court said that it would consider Moving Defendants' Motion as to the Amended Complaint. (Dkt. No. 31.) Although Moving Defendants' Letter referred to an "August 25, 2019" Motion, the Court did not see a corresponding Memorandum uploaded on the docket by Moving Defendants. After the Court informed Moving Defendants' counsel that their Memorandum of Law was missing from the docket, Moving Defendants uploaded their Memorandum to the docket. (*See* Moving Defs.' Mem. of Law in Supp. of Mot. ("Moving Defs.' Mem.") (Dkt. No. 35).) Plaintiff has not filed a substantive opposition to the Motion, and Moving Defendants did not file a reply. The Court considers the Motion fully submitted.

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions

5

devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d

6

99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  However, when the complaint is from a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

B.  <u>Analysis</u>

Moving Defendants argue that they were not alleged to be personally involved in any purported constitutional violation.  (*See generally* Moving Defs.' Mem.)

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who

7

committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (citation and italics omitted). In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

The Court agrees that the Amended Complaint fails to allege personal involvement as to Defendants Borehill, Diaz, Thomalin, Del Treste, Peters, Watkins, Vollmer, and Shultis. Regarding Borehill, Plaintiff failed to name him in the Amended Complaint entirely, including in the caption. (*See* Am. Compl.) Borehill is named as a Defendant in the original Complaint, (*see* Compl. 2),[3] but even there, Plaintiff fails to mention Borehill anywhere in the body of the Complaint, which constitutes grounds for dismissal, *see King v. Falco*, No. 16-CV-6315, 2018 WL 6510809, at *7 (S.D.N.Y. Dec. 11, 2018) (holding personal involvement not shown where the "plaintiff includes [the defendant's] name in the case caption but fails to make any substantive allegations against her in the body of the complaint"); *Washington v. Melis*, No. 16-CV-6469, 2018 WL 2324079, at *3 (S.D.N.Y. May 22, 2018) (same) (collecting cases).

The others named above should also be dismissed for failure to allege personal involvement because none of the allegations regarding them, even if true, constitutes a constitutional violation. For example, Watkins, Vollmer, and Shultis are alleged only to have

---

[3] The Court uses ECF-stamped page numbers when referring to the Complaint.

denied Plaintiff's grievance regarding the alleged assault and to have failed to investigate the purported assault. (*See* Am. Compl. ¶¶ 20, 23.) Although Plaintiff conclusorily alleges that Watkins and Vollmer "conspired" to deny Plaintiff's grievance, Plaintiff provides no facts to suggest the existence of any conspiracy. (*Id*. ¶ 23.) As for Shultis, Plaintiff only alleges that he did not investigate the incident because the incident was "already being investigated." (*Id*. ¶ 20.) "A supervisor's review and denial of a grievance constitutes personal involvement only if the supervisor either personally undertakes some kind of investigation or provides a detailed and specific response to the grievance's allegations." *Vail v. City of New York*, No. 18-CV-6169, 2020 WL 127639, at *2 (S.D.N.Y. Jan. 10, 2020) (citation, alteration, and quotation marks omitted).[4] No such allegations exist as to these Defendants; in fact, Shultis's alleged statement suggests that someone *else* was already conducting an investigation about the incident. Regardless, even if Shultis failed to investigate the incident, "[t]he law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Banks v. Annucci*, 48 F. Supp. 3d 394, 414 (N.D.N.Y. 2014) (citation omitted); *see also Henry v. Doe*, No. 19-CV-10153, 2020 WL 209091, at *8 (S.D.N.Y. Jan. 10, 2020) ("Courts in the Second

---

[4] The Court acknowledges, as it has before, that the "district courts within [the Second] Circuit are divided regarding whether review and denial of a grievance" may constitute personal involvement in certain circumstances. *Kramer v. Dep't of Corr.*, No. 15-CV-251, 2019 WL 4805152, at *6 (D. Conn. Sept. 30, 2019) (citation and quotation marks omitted), *appeal filed*, No. 19-3569 (2d Cir. Oct. 28, 2019). However, even district courts that do consider denying grievances a violation of § 1983 in certain circumstances limit it to situations where an official denies grievances regarding an *ongoing* violation. *See id*. "In the absence of an ongoing violation — one that is capable of mitigation — the defendant cannot be held personally liable." *Id*. (citation, alteration, and quotation marks omitted); *see also Monroe v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 16-CV-2818, 2019 WL 4688665, at *7 (S.D.N.Y. Sept. 25, 2019) (dismissing a § 1983 defendant who responded to an alleged constitutional violation that was discrete and not "ongoing") (collecting cases). Plaintiff's grievance was about a discrete incident of alleged physical abuse and is not the kind of ongoing constitutional violation that courts contemplate when analyzing § 1983 claims based on the denial of a grievance.

Circuit have held that a prisoner has no constitutional right . . . to have his grievances investigated." (citation and quotation marks omitted)). Accordingly, any claims against Shultis, Vollmer, and Watkins are also dismissed.

As to Diaz, Plaintiff only conclusorily alleges that he had "clear knowledge" of the purported assault and also knew of the "false reports" filed against Plaintiff and the excessive force used on him. (Am. Compl. ¶ 20.) Similarly, Plaintiff's allegation regarding Del Treste is that he was the "supervisor at the time, who investigated the incident." (*Id*. ¶ 23.) Without more, claims as to both Diaz and Del Treste also fail. Neither Diaz nor Del Treste can be held liable under § 1983 merely because he may have a supervisory or high-ranking role at the Jail. "Where a defendant is a supervisory official, a mere 'linkage' to the unlawful conduct through the 'chain of command' . . . is insufficient to show his or her personal involvement in that unlawful conduct." *Banks*, 48 F. Supp. 3d at 416 (citing, inter alia, *Polk County v. Dobson*, 454 U.S. 312, 325 (1981), and *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003)). As for Plaintiff's allegation that Del Treste investigated the incident, to begin, Plaintiff does not provide any allegations as to whether Del Treste's investigation was improper or how it was improper. Plaintiff does not even allege what his investigation purportedly concluded. In any event, as discussed above, inmates "do not have a due process right to a thorough investigation of grievances," *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 380 (S.D.N.Y. 2011) (citation and quotation marks omitted), so any purported failure to properly investigate Plaintiff's grievance cannot alone implicate Del Treste in a constitutional violation, *see Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) (dismissing plaintiff's §1983 claim because the "correction[] officers' failure to properly address [the plaintiff's] grievance by conducting a thorough

investigation to his satisfaction does not create a cause of action"). Accordingly, any claims against Diaz and Del Treste are also dismissed.

As to Thomalin, Plaintiff only alleges that he was "present in [the] medical [area] when [the emergency response team] took [Plaintiff] there" *after* the purported assault and that Plaintiff told him that the alleged attackers were "wrong." (*Id*. ¶ 20.) However, Plaintiff does not allege that Thomalin was present for the purported assault or in any position to have prevented or mitigated the purported assault. Nor does Plaintiff allege that Thomalin played any role in the subsequent investigation of Plaintiff's grievance or in his disciplinary hearing. Accordingly, Plaintiff has failed to allege that Thomalin, "through [his] *own individual* actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (emphasis added); *see also Vail*, 2020 WL 127639, at *2 (dismissing § 1983 claim where the complaint did not "directly plead" a defendant's "involvement in the [purportedly unconstitutional] decision"); *Leibovitz v. City of New York*, No. 14-CV-7106, 2018 WL 1157872, at *10 (E.D.N.Y. Mar. 2, 2018) (noting that the complaint fails to allege a § 1983 claim against a defendant because "it does not allege that he was personally involved in the relevant events").

As for Peters, Plaintiff alleges only that he was a detective in the Westchester County police department who was involved in the investigation of the criminal charges brought against Plaintiff. (Am. Compl. ¶ 23.) As discussed above, Plaintiff does not explicitly allege whether those criminal charges were directly related to the purported assault that occurred in the Jail on May 23, 2016. Even if they were related, Plaintiff further alleges that the criminal charges were ultimately dismissed. (*Id*. ¶ 24.) Accordingly, the Amended Complaint, as currently written, simply fails to implicate Peters in any constitutional violation. Plaintiff was not imprisoned for any longer amount of time due to the purported criminal charges. Plaintiff does not allege that

Peters conducted any sort of unconstitutional search of him or his cell while investigating the criminal charges. *See Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 510 (S.D.N.Y. 2008) (noting that the Fourth Amendment "requires all searches conducted within a prison . . . to be reasonable" and that they may be reasonable even without probable cause "as long as they are related to a legitimate penological goal" (citations omitted)). And to the extent Plaintiff served time in SHU for the incident, the Amended Complaint alleges that this was a consequence of a disciplinary hearing conducted within the facility determining that Plaintiff was guilty of a number of violations as an inmate, not a result of the state charges that Peters may have been involved in investigating. (*See* Am. Compl. ¶¶ 21–22.) Accordingly, any claims against Peters are also dismissed. *See Garvin v. Goord*, 212 F. Supp. 2d 123, 127 (W.D.N.Y. 2002) (dismissing § 1983 claims against a defendant because he was "not in any manner personally involved with the alleged deprivation of plaintiff's constitutional rights").

The Court disagrees with Moving Defendants, however, that Plaintiff also fails to plausibly allege personal involvement as to Roberts. Although perhaps somewhat lacking in depth of detail, the Amended Complaint does state that Roberts conducted Plaintiff's disciplinary hearing with "prejudice and bias," making at least one statement indicating that Roberts would take the correction officers' side no matter what evidence was presented. (Am. Compl. ¶ 22 ("I am going to go with what my officers say whether they are right or wrong.").) This is sufficient to plausibly allege a violation of Plaintiff's procedural due process rights. *See Scott v. Coughlin*, 78 F. Supp. 2d 299, 315 (S.D.N.Y. 2000) (noting that prisoners have the "right to an impartial hearing officer at a disciplinary hearing"). Although not every disciplinary hearing officer's "conflict[] of interest" rises to the level of "sufficient magnitude to violate due process," *id.* at 316 (citation and quotation marks omitted), due process does "clearly" require that a hearing

officer not "predetermine the outcome of a case," *Gilbert v. Selsky*, 867 F. Supp. 159, 161 n.4 (S.D.N.Y. 1994) (citation omitted). Plaintiff has alleged that Roberts engaged in improper predetermination of his disciplinary proceeding; accordingly, he has plausibly alleged Roberts' personal involvement in a constitutional violation.[5]

### III. Conclusion

For the reasons stated above, Moving Defendants' Motion To Dismiss is partially granted and partially denied. Plaintiff's claims against Defendants Borehill, Diaz, Watkins, Vollmer, Peters, Thomalin, Del Treste, and Shultis are dismissed. However, Plaintiff's claim against Roberts is not dismissed. Moving Defendants have made no arguments regarding Plaintiff's claims against Dinoia, Holness, or the unnamed ADA, so any claims as to them also remain in the Action. Because this is the first adjudication on the merits of Plaintiff's claims, the dismissal is without prejudice. If Plaintiff wishes to file a second amended complaint, Plaintiff must do so within 30 days of the date of this Opinion & Order. Plaintiff should include within that second amended complaint all changes to correct the deficiencies identified in this Opinion & Order that Plaintiff wishes the Court to consider. Plaintiff is advised that the second amended complaint will replace, not supplement, the Amended Complaint. The second amended complaint must contain *all* of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, the dismissed claims may be dismissed with prejudice, and the Action will proceed on the remaining claims.

This Opinion & Order resolves the instant Motion. (Dkt. No. 35.) The Clerk is respectfully directed to terminate Tufaro's Motion, (Dkt. No. 25), which was mooted by

---

[5] Although there may be other arguments that could merit dismissal of a procedural due process claim as to the disciplinary hearing, Moving Defendants did not raise them, and the Court will not address them sua sponte. (*See generally* Moving Defs.' Mem.)

Plaintiff's request to withdraw his claims against Tufaro, (*see* Dkt. No. 29). The Clerk is also requested to mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

DATED: March 12, 2020
        White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE